Maryann MAHAFFEY, et al., Plaintiffs,

v.

**DETROIT NEWSPAPER AGENCY,**
**et al., Defendants.**

No. 95-CV-75724.

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 1997.

Theodore Sachs, Detroit, MI, Donald I. Baker, Ernest Gellhorn, Washington, DC, for Plaintiffs.

Leonard M. Niehoff, Detroit, MI, for Defendants.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

O'MEARA, District Judge.

Before the court are cross motions for summary judgment, filed in April 1996. Timely responses and replies were submitted. The court heard oral argument on October 4, 1996, and took the matter under advisement. For the reasons expressed in this opinion, Plaintiffs' motion for summary judgment is denied and Defendants' motion is granted.

### BACKGROUND

This antitrust lawsuit was filed in November 1995; the named plaintiffs are Maryann Mahaffey, Coleman A. Young, Ron Owens, Jeanne Campbell, Sheila Cockrell, Baxter Marino, Tony J. Rothschild, and Paul Donahue. Defendants are the Detroit Newspaper Agency (DNA), *Detroit Free Press*, and *Detroit News.*

Plaintiffs have charged Defendants with antitrust violations stemming from Defendants' publication of a joint weekday newspaper for approximately two months in 1995. The *Detroit Free Press* and *Detroit News* entered into a Joint Operating Agreement (JOA), which was approved by then-Attorney General Meese, in 1986. This approval is required by the Newspaper Preservation Act (NPA), 15 U.S.C. §§ 1801–1804, which provides that competing newspapers can obtain antitrust immunity for JOAs that would otherwise violate the Sherman Act, 15 U.S.C. §§ 1–2. The JOA contemplated and permitted joint weekend and holiday (but not weekday) publication of the newspapers.

In 1992, the Detroit newspapers amended the JOA to allow joint weekday publication in the event of a strike. The Justice Department was notified of the amendment, but approval was neither sought nor obtained. The first time the Detroit newspapers implemented the amendment was in 1995, when a joint weekday newspaper was published between July and September during the first weeks of a strike by newspaper employees. Plaintiffs contend that the joint weekday publication constituted anticompetitive behavior that was not conferred immunity under the NPA. Defendants' joint weekday publication in response to a strike is not immune from antitrust liability, according to Plaintiffs, because Defendants did not obtain approval of the JOA amendment from the attorney general. Plaintiffs also assert that the amendment of the JOA created a "new" JOA that must be completely reviewed and approved under the NPA.

Defendants respond that Plaintiffs lack standing to bring this suit because they can neither demonstrate injury in fact nor antitrust injury. Defendants further assert that they were not required to obtain approval for their amendment to the JOA. Even if the court finds the amendment to be invalid, Defendants contend, the original JOA is intact and the Defendants' actions pursuant to it remain immune from antitrust liability.

### LAW AND ANALYSIS

#### A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### B. Plaintiffs' Motion

Plaintiffs seek partial summary judgment on the issue of price-fixing liability. Plain-

tiffs argue that Defendants have engaged in price-fixing and have restricted output in violation of state and federal antitrust laws. According to Plaintiffs, the burden is on Defendants to demonstrate that they are entitled to immunity under the NPA. Plaintiffs contend that Defendants are not entitled to immunity because Defendants amended the JOA in 1992 without seeking approval from the attorney general. *See* 15 U.S.C. § 1803(b) (JOAs entered into after 1970 are not conferred immunity unless approved by the attorney general). The key to Plaintiffs' theory is that the amendment of the Detroit JOA created a new JOA and that Defendants were required once more to go through the JOA approval process, which involves financial disclosures, public hearings, etc. Any unapproved amendment to a JOA, according to Plaintiffs, strips the entire JOA of antitrust immunity and requires the parties to the agreement to start over.

■ The court declines to find that, as a matter of law, any unapproved amendment would immediately cause the forfeiture of antitrust immunity for an entire JOA. First, neither the NPA nor its regulations set forth a procedure for amending post–1970 JOAs.[1] *See* 15 U.S.C. §§ 1801–1804; 28 C.F.R. §§ 48.1–48.16. Plaintiffs suggest that no specific amendment procedure exists because amendments to post–1970 JOAs create "new" JOAs. Had Congress intended all amendments to create such sweeping consequence, however, it could have easily included language to that effect in the statute. Further, requiring the parties to a JOA to go through the cumbersome approval process (including possible judicial review) for every amendment, no matter how minor, defies common sense. The Detroit JOA, in the form approved by the attorney general, has a hundred-year term. Presumably, some changes to the agreement were contemplated by section 9.5, which permits amendment to the JOA if the amendment is in writing.

Plaintiffs may be correct in their suggestion that Defendants cannot amend their post–1970 JOA freely and that the particular amendment Plaintiffs complain of here is inconsistent with the purpose and policy of the NPA and the various constituent interests Congress sought to protect by the Act. It does not follow, however, that the JOA would lose its antitrust immunity by the mere filing of the 1992 amendment. At most, Defendants might lose antitrust immunity for the actions taken in implementing the amendment in 1995.

The court recognizes that, once it refuses to invalidate all unapproved JOA amendments in a bright-line fashion, difficult questions arise concerning how to evaluate whether a particular amendment might destroy antitrust immunity. Under the facts at hand, however, the court need not reach these questions. The court concludes that, even assuming that the actions taken in 1995 pursuant to the 1992 amendment did not enjoy antitrust immunity under the NPA, Plaintiffs' suit cannot proceed because they have not demonstrated that they have suffered an injury in fact or antitrust injury.

### C.  Defendants' Motion

In their motion, Defendants argue that Plaintiffs' suit should be dismissed because they have not met all the elements of an antitrust action, particularly the requirements of injury in fact and antitrust injury.

### 1.  Elements of an Antitrust Action

■ A private cause of action for antitrust violations is permitted by section 4 of the Clayton Act, which provides,

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a). To prevail on a federal antitrust claim for damages, a plaintiff must prove the following elements:

(1) a duty recognized by the antitrust laws; (2) a violation of the antitrust laws; (3)

---

1. Pre–1970 JOAs may be amended freely, as long as the amendments are filed with the Department of Justice.

injury to an interest protected by the antitrust laws and attributable to the antitrust violation—that is *antitrust injury;* and (4) a direct link between the antitrust violation and the antitrust injury, that is to say, *standing.*

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 395 (7th Cir. 1993), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994) (noting that the Seventh Circuit prefers to analyze antitrust injury and standing separately, although many courts describe the antitrust injury requirement as an element of standing).[2] As is the case for damages claims in general, Plaintiffs must show actual injury in order to state a claim under section 4. *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 110, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986) (noting the differences between damages claims under section 4 and claims for injunctive relief under section 16).

■ Plaintiffs also seek injunctive relief, which may be obtained pursuant to section 16 of the Clayton Act, codified as 15 U.S.C. § 26. Section 16 provides,

> Any person ... shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws....

15 U.S.C. § 26. As with a damages claim under section 4, a plaintiff seeking injunctive relief must demonstrate antitrust injury, that is, "threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Cargill,* 479 U.S. at 113, 107 S.Ct. at 491 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)).

## 2. Actual Injury

■ Defendants assert that Plaintiffs cannot demonstrate that they have been injured in fact by Defendants' alleged antitrust violations. Plaintiffs urge that Defendants have

engaged in price-fixing and have restricted output, thereby depriving them of competition. It is true that the prices for the newspapers are set jointly by the DNA; Defendants maintain that such action is sanctioned by the JOA and is conferred antitrust immunity by the NPA. Plaintiffs claim, however, that Defendants' amendment of the JOA in 1992 created an entirely "new" JOA that should have been completely reevaluated by the U.S. attorney general pursuant to the NPA. Because Defendants did not seek such reevaluation, Plaintiffs contend, the JOA has been stripped of its antitrust immunity. As discussed previously, the court declines to accept Plaintiffs' theory. The court finds that the joint setting of prices by Defendants pursuant to unamended provisions of the JOA is protected by antitrust immunity conferred by the NPA.

■ Plaintiffs also claim to be injured in fact by Defendants' publication of a daily joint masthead newspaper during the strike. Plaintiffs deem this an "output restriction." From a common-sense perspective, output restrictions are harmful in that they usually lead to higher prices. Defendants did not publish a joint masthead newspaper during the strike so that they could charge higher prices, however, nor did they. Plaintiffs maintain, however, that "product choice is a critical part of free market competition." Pls.' Resp. at 9. Even if Plaintiffs were denied "product choice" during the strike, and assuming that this constituted an antitrust violation, they must show that they were actually injured to recover damages. *See Greater Rockford,* 998 F.2d at 395; *McAlpine v. AAMCO Automatic Transmissions, Inc.,* 461 F.Supp. 1232, 1264 (E.D.Mich.1978) ("The mere existence of an antitrust violation is not sufficient in itself to support a private antitrust action, nor does a violation per se give a private cause of action.").

---

2. Plaintiffs have also stated a claim for damages under the Michigan Antitrust Reform Act (MARA), which is patterned after the Sherman Act and allows recovery for "damages sustained by reason of a violation of this act." M.C.L. § 445.778. Both federal and state courts consis-

tently apply Sherman Act precedent to MARA claims. *See, e.g., ETT Ambulance Serv. Corp. v. Rockford Ambulance, Inc.,* 204 Mich.App. 392, 397, 516 N.W.2d 498 (1994); *General Aviation, Inc. v. Garrett Corp.,* 743 F.Supp. 515, 523 (W.D.Mich.1990).

Plaintiffs have not demonstrated, however, how they were injured in fact by the publication of the joint daily newspaper during the strike. This is particularly true given the circumstances surrounding the joint publication. Defendants assert that the strike left them unable, for some time, to publish separate daily editions; Plaintiffs do not dispute this. It therefore was not a voluntary action on Defendants' part that left Plaintiffs without "product choice" during the strike. Furthermore, the alternative to publishing a joint daily edition during the first two months of the strike might well have been to not publish a newspaper at all—hardly a victory for "product choice." *See* Anderson Declaration ¶¶ 10–12 (explaining the severe staff shortages created by the strike).

The court notes that injury in fact does not automatically follow from the existence of an antitrust violation such as an output restriction. Injury in fact must be proven as a separate element of an action pursuant to section 4 of the Clayton Act. *See Cargill,* 479 U.S. at 110, 107 S.Ct. at 489. Because Plaintiffs have not presented facts supporting their assertion of actual injury, their claim for antitrust damages cannot be maintained.

### 3. Antitrust Injury

■ Defendants also contend that Plaintiffs cannot establish that they have suffered an antitrust injury, which is an injury "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344, 110 S.Ct. 1884, 1894, 109 L.Ed.2d 333 (1990) (emphasis in original).

Defendants argue that they did not harm product competition by publishing a joint daily edition during the strike; rather, Defendants claim, they furthered competition by ensuring that separate editorial voices were heard during that time. The court agrees that the temporary publication of a joint newspaper during a strike—although it may be termed an "output restriction" in the abstract—is not the type of competition-harming activity that the antitrust laws were enacted to prevent. *See id.* at 342, 110 S.Ct. at 1893–94 (the antitrust injury requirement "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place").

Defendants' publication of a joint masthead newspaper for two months during the strike was not anticompetitive behavior but an attempt by Defendants to continue editorial competition between the *Detroit News* and *Detroit Free Press* in the face of severe staff shortages created by the strike. Such efforts to prevent the temporary or permanent disappearance of one or more editorial voices do not give rise to an antitrust injury. Because Plaintiffs cannot demonstrate that they suffered an antitrust injury, their claims for damages and injunctive relief cannot proceed.

### ORDER

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' April 29, 1996 motion for summary judgment is **DENIED.**

It is further **ORDERED** that Defendants' April 4, 1996 motion for summary judgment is **GRANTED.**